IN THE CIRCUIT COURT FOR TALBOT COUNTY, MARYLAND

EASTERN SHORE LAND       *
CONSERVANCY
118 Wye Narrows Drive       *
Queenstown, MD 21658
      *
    Plaintiff
      *     Case No.: 20C1500 9040

      *
CHARLES MILLER
P.O. Box 138       *
100 South Cass Street
Middletown, DE 19709       *

and       *

ENVIRONMENTAL TESTING, INC.       *
P.O. Box 138
100 South Cass Street       *
Middletown, DE 19709

SERVE: Susan M. Shaner, CPA, Resident Agent       *
        5695 Telegraph Road
        Elkton, MD 21921       *

and       *

ENVIRONMENTAL CONSULTING       *
SERVICES, INC.
P.O. Box 138       *
100 South Cass Street
Middletown, DE 19709       *

SERVE: Robert C. Zimny, Resident Agent       *
        6218 Telegraph Road
        Elkton, MD 21921       *

    Defendants.       *

*    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT

    Plaintiff, the Eastern Shore Land Conservancy, a private, 501(c)(3) charitable corporation

(hereinafter "ESLC" or "Plaintiff"), by its undersigned counsel, hereby files this Complaint against

Defendants, Charles Miller, Environmental Testing, Inc. and Environmental Consulting Services, Inc. (collectively, "Defendants").  This is an action for breach of contract, gross negligence, negligent misrepresentation, and negligence, which seeks consequential damages including, but not limited to, lost profits, attorneys' and other professional fees.

## THE PARTIES

1.      Eastern Shore Land Conservancy is a private, 501(c)(3) charitable corporation, which is incorporated in Maryland and in good standing with the Maryland State Department.

2.      On information and belief, Charles Miller is an individual residing in Middletown, Delaware ("Mr. Miller").

3.      On information and belief, Mr. Miller is an employee and/or agent of and/or affiliated with Environmental Testing, Inc. and/or Environmental Consulting Services, Inc.

4.      On information and belief, Environmental Testing, Inc. is a for-profit corporation incorporated in Maryland with its primary office in Delaware ("ETI").

5.      On information and belief, Environmental Consulting Services, Inc. is a for-profit corporation incorporated in Delaware, which is registered to do business in Maryland with the Maryland State Department ("ECS").

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) because the Defendants' performance of work, tortious acts and breaches occurred in the state of Maryland.

7.      Venue is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201(a) because at least one of the Defendants habitually carries on a regular business or engages in a vocation in Talbot County, Maryland, and/or § 6-202 based on Plaintiff's residence and the place in which damages and the cause of actions arose.

4817-6910-0129v1||02497-000003                                              2

## The Property

8.     In early 2012, ESLC sought larger headquarters for its operations, and explored several different properties for possible purchase and development. To assist Plaintiff in this effort, Defendants were hired in 2012 – 2013 to evaluate at least three different properties for possible acquisition.

9.     Following Defendants' preliminary assessments of these three properties, ESLC focused its attention on a property, identified as Parcel 1979 among the tax records of Talbot County, which is comprised of approximately 37,109 square feet of land located at 120 South Street Easton, Maryland at the intersection of South Washington Street and Vine Street, Talbot County ("Property").

10.    The Property is bounded to the north by a gasoline service station and residences; to the east by residences; to the south by residences; and to the west by a garage/storage building and by south Washington Street.

11.    On information and belief, from approximately 1965 through 1991, the Property was owned and operated by McCord's Laundry, Inc. ("McCord"). In 1991, the Property was sold to Lincoln County Land and Cattle Company ("Lincoln").

## Purchase and Environmental Investigation of the Property

12.    On March 8, 2012, Lincoln agreed to sell the Property to ESLC pursuant to a contract of sale, which provided for a study period to allow ESLC to evaluate the Property.

13.    To ensure that ESLC was not liable for any preexisting contamination, ESLC sought to qualify as an "innocent land owner" ("ILO" status) which, under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 USC § 9601(35)(A)(i), would protect ESLC from environmental liability. In order to qualify for such ILO status, a purchaser must comply with Section 101(35)(B) of CERCLA, 42 USC

3

§ 9601(35)(B), which sets forth the general statutory criteria for conducting due diligence, otherwise referred to as "all appropriate inquiries" ("AAI") and incorporates by reference the requirements of ASTM Standard E1527-97, entitled "Standard Practice for Environmental Site Assessment: Phase I Environmental Site Assessment Process" ("ASTM E1527-05"). The ASTM E1527-97 standard was subsequently updated, as ASTM E1527-05, in 2005, and was the version applicable at the time Defendants' acts and omissions occurred.

14.     To assist ESLC in deciding whether to purchase the Property from Lincoln, ESLC retained Defendant Mr. Miller, who was represented to have been affiliated with ETI and/or ECS, to provide due diligence services and to conduct a Phase I Environmental Property Assessment ("Phase I ESA") in accordance with the AAI and ASTM 1527-05 Standards.

15.     ESLC relied upon the Defendants to conduct the Phase I ESA accurately and in conformance with CERCLA's AAI and ASTM E1527-05 standards.

16.     ESLC relied upon Defendants to perform the Phase I ESA in a manner consistent with that level of care and skill ordinarily exercised by other qualified environmental professionals performing such services at the same time performed.

17.     On or around March 19, 2012, Defendants advised Plaintiff about non-ASTM E1527-05-related matters (such as the asbestos-containing materials), and that the "MDE appears to have [given] a clean bill on the facility . . . [and] MDE should have caught any contaminants from a solvent tank."

18.     Defendants subsequently issued its Phase I ESA Report, dated May 25, 2012 ("ESA"). Following the issuance of Defendants' Phase I ESA Report, Defendants advised ESLC by email, dated May 29, 2012, that the scope of any contamination at the Property was related only to non-ASTM E1527-05 related matters, such as the asbestos materials within the building, for which the "bounds of the contamination" are known and can be cleaned up.

Defendants' Phase I ESA did not identify any specific recognized environmental conditions ("RECs") or historical recognized environmental conditions as defined by CERCLA's AAI or ASTM E1527-05 standards.

19.     Neither the Phase I ESA Report nor Defendants advised Plaintiff that the historical use of the Property as a dry cleaning facility, which utilized and stored various dry cleaning solvents, and operated underground storage tanks, was either a current or historical REC or should be further evaluated.

20.     Upon completion of Defendants' services, ESLC paid Defendants for their services.

21.     Based on Defendants' Phase I ESA and follow-up opinions characterizing the asbestos and building conditions, ESLC's purchase of the Property was finalized on April 15, 2013 pursuant to that Deed recorded among the Land Records of Talbot County, Maryland in Liber 2080, folio 001.

## Property Development and Contamination at the Property

22.     In June 2013, ESLC commenced development work at the Property. This work included, but was not limited to, geotechnical work conducted by an engineering company to evaluate soil borings for storm water management at the Property. Based on the geotechnical work, several borings were discovered to have been impacted with petroleum hydrocarbons. As a result, ESLC notified the Maryland Department of the Environment ("MDE"), which subsequently required that the Property be evaluated for both solvents and petroleum hydrocarbons, which have been detected on the Property. To date, MDE has and is requiring that additional site investigation work be conducted both on and off the Property, which ESLC has performed.

23.     The ongoing environmental site investigation work at the Property, which has been performed by Plaintiff, indicate that soil and groundwater at the Property have been impacted by the historical laundry operations conducted at the Property.

24.     MDE issued a notice letter, dated February 24, 2014, which advised McCord and Lincoln that as former owners and operators of the Property, they were "responsible persons" as defined by § 7-201 of the Md. Code Ann. Envir. and liable for the investigation and cleanup work at the Property. MDE advised that Plaintiff was also a "responsible party" but would not issue a similar letter to Plaintiff as long as Plaintiff performed work at the Property.

25.     To respond to MDE's requests for environmental investigation work at the Property and MDE's notice letter, Plaintiff was compelled to retain services of an environmental consultant and legal counsel.

### Damages Suffered by ESLC

26.     ESLC continues to incur costs to investigate and remediate the Property. As a result of the site conditions, the development of the Property, originally scheduled for completion in the summer of 2014, will be delayed substantially with a resulting loss of sales, income, profits, and tax credits and the incurrence of substantial general, actual and consequential damages.

27.     Under the New Markets Tax Credit Program (the "Program"), the Plaintiff and its affiliates received a letter commitment, dated July 3, 2013, from The Reinvestment Fund ("TRF") in which TRF reserved up to $6,000,000 in New Markets Tax Credits for the development of the Property ("Property"). The letter from TRF anticipated a closing date of September 16, 2013, subject to certain rights by the Plaintiff to extend the date. Likewise, the Plaintiff and its affiliates received a letter commitment, dated June 20, 2013, from J.P. Morgan Chase Bank, N.A. ("Chase") in which Chase reserved up to $1,000,000 in New Markets Tax

Credits for the Project. The letter from Chase anticipated a closing date of October 31, 2013. As a result of the environmental contamination at the Property, the Plaintiff's ability to close under the Program with TRF and Chase was delayed by nearly a year, resulting in substantial economic losses to Plaintiff.

28.     As a result of Defendants' failures, acts and omissions, which include, but are not limited to, their failures to identify current and/or historical recognized environmental conditions; failure to recommend phase II evaluations or entry into the State's Voluntary Cleanup Program prior to acquisition; and failure to provide accurate or complete assessments concerning the Property, which did not materially comply with CERCLA's AAI and ASTM 1527-05 standards, ESLC was unable to evaluate fully the various liabilities, financial costs, alternatives and liability protections when it purchased the Property and has incurred and will incur substantial general, actual and consequential damages (including, but not limited to, diminution of property value, lost rental income; increased construction and carrying costs, including pollution liability insurance; loss of New Market Tax credits; incurrence of costs for environmental assessments, potential remediation work,  consultants and attorneys' fees) as a result of Defendants' failures, acts and omissions.

## COUNT I
### Breach of Contract

29.     ESLC realleges and incorporates by reference Paragraphs 1 through 28, as if fully set forth herein.

30.     Defendants entered into a contract with ESLC and Defendants agreed to conduct an environmental assessment and evaluation of the Property in accordance with applicable due diligence standards as required by CERCLA's AAI and ASTM E1527-05 standards.

31.     Defendants failed to exercise the appropriate standard of care expected of a qualified environmental professional and therefore breached their contractual duties to Plaintiff

4817-6610-0129v1||02497-000003

through their numerous acts and omissions, including, but not limited to, Defendants' failure to provide a complete and accurate environmental assessment of and recommendations concerning the Property in accordance with applicable due diligence standards as required by CERCLA's AAI and ASTM E1527-05 standards.

32.   As a direct and proximate result of Defendants' failures and resulting breaches of contract, ESLC has suffered and will continue to suffer general, actual and consequential damages.

## COUNT II
### Gross Negligence

33.   ESLC realleges and incorporates by reference Paragraphs 1 through 32, as if fully set forth herein.

34.   Defendants held Miller out to ESLC as a skilled environmental professional qualified to conduct the Phase I ESA as required under CERCLA's AAI and ASTM E1527-05 standards.   As such, ESLC expected Miller to use and Miller had a manifest duty to use the level of care and skill ordinarily exercised by environmental processionals to conduct the Phase I ESA Report of the Property in conformance with CERCLA's AAI and ASTM E1527-05 standards.

35.   Defendants' negligent acts and omissions were extreme, outrageous and in reckless disregard of ESLC's property interests, so as to be deemed the equivalent of Defendants' having actual knowledge of the peril to be apprehended, coupled with a conscious failure to avert harm to ESLC.

36.   Defendant's negligent acts and omissions were characterized by a) a failure to perform a manifest duty with extreme recklessness, indifference and utter disregard of the consequences affecting ESLC, the Property and the environment, and b) a thoughtless disregard

8

of the consequences without effort to avoid them, and with utter indifference to the rights of ESLC and the environment as if such rights did not exist.

37. Defendants' grossly negligent acts and omissions include, but are not limited to, failing to assess the property in conformance with CERCLA's AAI and ASTM E1527-05 standards, failing to properly recommend Phase II recommendations, and advising that the scope of environmental conditions at the Property were limited to asbestos-containing materials that were known, defined and could be cleaned up.

38. As a result of Defendants' gross negligence, ESLC has suffered, and continues to suffer damages.

## COUNT III
### Negligence

39. ESLC realleges and incorporates by reference Paragraphs 1 through 38, as if fully set forth herein.

40. Defendants, which held themselves out to ESLC as qualified environmental professionals, had a duty to use the skill and diligence that a reasonable person of its class, as qualified environmental professionals would employ in connection with its responsibilities at the Property.

41. Mr. Miller had a duty of care to ESLC as a hired environmental professional and scientist to provide accurate information regarding the condition of the Property, and to assess the Property in accordance with CERCLA's AAI and ASTM's E1527-05 standards within the scope of the engagement.

42. Defendants breached their duty of care when they negligently prepared and issued a deficient Phase I ESA, which did not comply with CERCLA's AAI or ASTM E1527-05 standards, and failed to warn ESLC of the attendant risks at the Property, failed to recommend appropriate Phase II assessments of the Property prior to ESLC's purchase of the

4817-6010-0129v1|02497-000003

Property, and assured Plaintiff that contamination conditions at the Property were known, defined and could be cleaned up.

43.     In reliance on Mr. Miller's ESA Phase I Report and statements, ESLC purchased the Property without knowing of the attendant risks at the Property, without having conducted any Phase II assessment work, and without fully considering other properties or liability protection alternatives.

44.     As a result of Defendants' breaches, act and omissions, ESLC purchased the Property and has incurred or will incur unplanned costs, including, but not limited to:  a) Property carrying costs; b) the loss of New Market Tax credits and rental income; c) environmental assessments required by MDE; c) pollution liability insurance; d) retaining consultants and counsel to address MDE issues; e) potential remediation work; and f) increased site development costs.

45.     There is justly due and owing to ESLC from Defendants compensation arising from actual and consequential damages incurred by ESLC for the site investigation work being required by MDE, related consultant's and legal fees, potential remediation work, and other consequential damages, plus all other costs, charges, and fees.

46.     Defendants' negligent acts and omissions at the Property, including, but not limited to, their failure to warn ESLC of the attendant risks and their failure to recommend that appropriate Phase II assessments be conducted at the Property with respect to potential solvent and petroleum contamination prior to the purchase, constituted a breach of Defendants' duties.

47.     As a result of Defendants' negligence, ESLC has suffered, and continues to suffer damages.

## COUNT IV
### Negligence Misrepresentation

48.     ESLC realleges and incorporates by reference Paragraphs 1 through 47, as if fully set forth herein.

49.     On March 19, 2012, Defendants in an e-mail to ESLC advised ESLC of Defendants' findings and identified only non-ASTM matters, such as asbestos, lead and a fumigator.  Defendants did not mention former underground storage tanks or potential dry cleaning solvents as potential concerns at the Property. *See* March 19, 2012 email attached hereto as **Exhibit 1.**

50.     Following the issuance of Defendants' Phase I ESA, Defendants advised ESLC by email dated May 29, 2012, that the scope of any contamination at the Property was related only to non-ASTM E1527-05 related items, i.e., the asbestos containing materials within the building for which the "bounds of the contamination" are known, or defined and can be cleaned up.

51.     ESLC relied upon Defendants' opinion that conditions at the Property were known and limited to the asbestos-containing materials only.

52.     Defendants had a duty of care to Plaintiff and to provide accurate environmental information and recommendations concerning the Property's actual and historical recognized historical conditions.  Defendants intended for ESLC to rely upon Miller's e-mails as assurances regarding the condition of the Property because he was hired for the purpose of assessing the site and reporting its conditions.

53.     Defendants had knowledge that ESLC would rely on Miller's statements and either had knowledge or should have known that if the ESLC went ahead with the purchase of the Property, Plaintiff could be deemed responsible for contamination at the Property and could incur significant costs to develop the Property.

4817-6010-0129v1](102497-000003

54.    ESLC justifiably relied on Miller's statements as those of an expert and bought the Property without conducting further assessments, without considering other property options, and without taking other protective measures.

55.    By failing to advise Plaintiff accurately of the potential risks, Defendants breached their duties to ESLC to use reasonable care to accurately characterize the truth and accuracy of their statements before making them.

56.    ESLC justifiably relied, to its detriment, on Defendants' statements that the conditions of concern were limited to asbestos-containing materials for which the "bounds of the contamination" are known and can be cleaned up.

57.    As a result of Defendants' misrepresentations of fact, ESLC suffered damages.

WHEREFORE, Plaintiff, Eastern Shore Land Conservancy, demands judgment against Defendants in excess of One Million ($1,000,000) Dollars plus accrued interest, attorneys' fees, court costs, and further amounts this Court deems appropriate.

Date: February 24, 2015                    Respectfully submitted,

Marian C. Hwang
Demetrios G. Kaouris
Jennifer M. Rothschild
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202
Tel: 410-385-3734
101 Bay Street, Suite 2
Easton, MD 21601-2718
Tel: 410-822-5280
mhwang@milesstockbridge.com
kdemetrios@milesstockbridge.com
jrothschild@milesstockbridge.com

*Attorneys for Plaintiff, Eastern Shore Land Conservancy*

4817-6010-0129v1|102497-000003